## *QUIJANO & ENNIS*
ATTORNEYS AT LAW
381 PARK AVENUE SOUTH
SUITE 701
NEW YORK, NEW YORK 10016

TELEPHONE: (212) 686-0666
FAX: (212) 686-8690

**Peter Enrique Quijano**
**Nancy Lee Ennis**

December 20, 2007

**BY ECF AND BY FedEx**

Honorable David G. Trager
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re: U.S. v. Troy Vaval, 03 Cr. 241 (DGT)

Dear Judge Trager:

As the attorney for the defendant Troy Vaval in the above-referenced matter, I respectfully write on his behalf. At the direction of the U. S. Court of Appeals for the Second Circuit, this matter has been referred to your Honor for resentencing as a remedy for the Government's breach of its plea agreement with Mr. Vaval. In referring this matter back to the District Court for resentencing, the Court of Appeals stated that, because the Government breached the plea agreement by engaging in sentence advocacy, "this breach requires the remedy of resentencing before a different district judge." U.S. v. Troy Vaval, 404 F.3d 144, 156 (2d Cir. 2005). Mr. Vaval is scheduled to appear before your Honor for resentencing on January 23, 2008 at 11:00 a.m. This letter is respectfully submitted pursuant to Rule 32, Fed. R. Crim. P., to advise the Court of matters that the defendant will raise to aid in the determination of the appropriate sentence.

*Background*:

On January 2, 2003, a Confidential Informant working with law enforcement officers made arrangements to purchase firearms from Troy Vaval using "buy money"

1

Honorable David B. Trager
December 20, 2007

supplied by the Bureau of Alcohol, Tobacco and Firearms (ATF). Under the supervision of law enforcement, the Confidential Informant drove to an address on the Van Wyck Expressway in Queens, New York, where he was directed by Mr. Vaval to follow his vehicle into an alley. It was there that Mr. Vaval, together with several accomplices, participated in robbing the Confidential Informant at gun-point, taking his "buy money" and attempting to steal his car. Driven by an accomplice, the Confidential Informant's car was blocked by law enforcement and crashed into a police vehicle. Mr. Vaval fled in a separate vehicle and was arrested on January 10, 2003.

Mr. Vaval has been incarcerated since his arrest on the instant charges. Pursuant to a six-count indictment, Mr. Vaval was accused in Counts One and Two of participating with Carl Lewis and Nathaniel Bernard in the robbery and car-jacking of another individual, and putting that person's life in jeopardy by the use of a dangerous weapon. Counts Three and Four lodged weapons charges against the two co-defendants, but did not apply to Mr. Vaval. Counts Five and Six charged Mr. Vaval as a felon in possession of a firearm, a .40 caliber Berreta pistol from which the serial number had been removed.

As to his two co-defendants herein, Carl Lewis entered into a cooperation agreement with the Government, and Nathaniel Bernard proceeded to a jury trial before the Hon. Carol B. Amon. Unlike his co-defendant Mr. Bernard, Mr. Vaval eschewed trial, choosing instead to accept responsibility for his actions by pleading guilty. Pursuant to a plea agreement, Mr. Vaval entered his plea of guilty on September 9, 2003, to Count Two of the indictment. Specifically, Count Two charged Mr. Vaval with acting together with others intentionally to rob a person having lawful custody of money belonging to the United States (i.e., the Bureau of Alcohol, Tobacco and Firearms), and putting such person's life in jeopardy by use of a dangerous weapon, in violation of 18 U.S.C. Sections 2114(a), 2 and 3551 et seq.

### ***The Plea Agreement*:**

The plea agreement entered into by Mr. Vaval and the Government in 2003 stated that:

2

Honorable David B. Trager
December 20, 2007

>The defendant's sentence is governed by the United States Sentencing Guidelines. . . .Based on information known to the Office at this time, the Office estimates the likely adjusted offense level under the Sentencing Guidelines to be level 30, which is predicated on the following Guidelines calculation:
>
>| | | |
>|---|---|---|
>| 1. | Base Offense Level (2B3.1(a)) | 20 |
>| 2. | Plus: Firearm Possessed (2B3.1(b)(2)(C)) | +5 |
>| 3. | Plus: Person Abducted (2B3.1(b)(4)(A) | +4 |
>| 4. | Plus: Offense Involved Carjacking (2B3.1(b)(5) | +2 |
>| 5. | Plus: Role Adjustment (3B1.1©) | +2 |
>| 6. | Less: Acceptance of Responsibility (3E1.1 (b)) | -3 |
>| 7. | Total: | 30 |

(Plea Agreement, p. 2, ¶ 2).

The document further stated that "[t]his level carries a range of imprisonment of 121 - 151 months, **assuming a Criminal History Category of III**." (Plea Agreement, p. 2) (emphasis supplied). Notably, however, Troy Vaval's correct Criminal History Category was subsequently determined to be Category II, not III. Accordingly, based upon the agreed-upon Guideline level of 30, the accurate range of imprisonment for Mr. Vaval should have been 108 - 135 months.

Significantly, the plea agreement further included the Government's pledge that it would take no position concerning where within the Guidelines range the sentence should fall, and would make no motion for an upward departure under the Sentencing Guidelines (Plea Agreement, p. 4, ¶5 (b) and (c)).

### *The Presentence Report (PSR):*

The Guidelines calculations set forth in the Presentence Report ("PSR") were at variance with the plea agreement calculations in one important way: Added to the

Honorable David B. Trager
December 20, 2007

offense level computation which both the Government and Mr. Vaval had agreed upon was a two-level enhancement pursuant to 3C1.2 (PSR, p. 6, ¶18). The Probation Department recommended this 2-level increase on the grounds that Mr. Vaval had fled from the scene of the crime in his vehicle at a high rate of speed, driving over sidewalks, with law enforcement officials in pursuit. (No one was injured). But this information had been well-known to the Government at the time of its entry into the plea agreement with Mr. Vaval. Because the Government neither requested nor insisted upon the inclusion of such an enhancement as a condition of the plea agreement, its inclusion in the PSR calculations violated Mr. Vaval's understanding of his agreement with the Government. [1] Regrettably, however, Mr. Vaval's prior counsel made no objection to the addition of this enhancement in the PSR.

The PSR correctly determined that Mr. Vaval's actual Criminal History Category is II, not III. (PSR, pp. 7-8, ¶29).

### *The Sentencing Hearing*

At the sentencing hearing, the district court adopted the PSR's Guidelines computation, although – as previously noted – it exceeded the calculation contained in the plea agreement by two levels. Defense counsel asked the court to impose a sentence at the low end of the Guidelines range, while Mr. Vaval expressed remorse,

---

[1] Mr. Vaval does not know why his attorney made no objection to the inclusion of this enhancement at his sentencing hearing. When Mr. Vaval realized the import of his attorney's concession, he sought to appeal, in part, on the grounds of ineffectiveness of counsel. Based upon appellate counsel's brief, however, the Court of Appeals construed this claim to be based solely upon defense counsel's failure to file a "Sentencing Memorandum" and her failure to object to a Rule 11 violation. The Court said that "[e]ven if we assume that counsel's actions 'fell below an objective standard of reasonableness,' Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). appellant has not alleged, much less proven, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' id at 694." U.S. v. Troy Vaval, 404 F.3d 144, 148, *FN*. 1. What the Court of Appeals did not consider – perhaps because of appellate counsel's oversight – was that defense counsel's failure to object to the extra two-level enhancement – *an enhancement not contemplated by the Plea Agreement* -- may indeed have affected the outcome of the sentencing proceedings.

Honorable David B. Trager
December 20, 2007

apologized for his conduct, accepted responsibility for what he had done, and asked for leniency.

The Government, after acknowledging that it had waived its right in the plea agreement to argue for an upward departure, or to ask for a sentence at the high end of the Guidelines range, nonetheless proceeded to do just that. In effect, by vigorously emphasizing the heinousness of the crime charged, and by arguing that Mr. Vaval's Criminal History Category under-represented his criminal past, the Government urged the court to impose a sentence which in fact exceeded the terms of the plea agreement.

The District Court imposed a term of imprisonment of 168 months, a sentence which was considerably greater than the term of 121 - 151 months contemplated in the plea agreement (based upon an incorrect CHC calculation) or the applicable Guideline range of 108 - 135 months (based upon the correct CHC calculation). Because the sentence was in excess of the range agreed to by Mr. Vaval in his plea agreement, the District Court advised him that he had the right to appeal.

### *The Appeal*

Shocked at the disparity between the sentencing calculations set forth in his plea agreement and the sentence he actually received, Troy Vaval appealed his sentence. He argued, *inter alia*, that the Government had breached its plea agreement "by its argumentative relating of the facts of appellant's crime and the seriousness of his criminal history." U.S. v. Troy Vaval, supra, 404 F.3d at 152.

The Court of Appeals agreed. Citing its decision in United States v. Lawlor, 168 F.3d 633, 636 (2d Cir. 1999) the Court stressed that "because plea bargains require defendants to waive fundamental constitutional rights, prosecutors are held to meticulous standards of performance." U.S. v. Troy Vaval, supra, 404 F.3d at 152-153. Here, the Court chastised the Government for volunteering "highly negative characterizations of appellant's criminal history as 'appalling' and his purported contrition as 'disingenuous.'" Id. at 153. Indeed, the Government told the sentencing court that it was precluded from arguing for a higher sentence, but then went on to do

Honorable David B. Trager
December 20, 2007

just that. In its opinion, the Court described how the Government's use of "vivid detail" effectively constituted an impermissible argument for a higher sentence or an upward departure. Id.

The Court of Appeals concluded that the Government had breached its plea agreement with Troy Vaval. Noting the "severity and context" of the Government's breach, the Court said, "[t]he government's conduct in this case went far beyond a few ill-advised words." Id. at 154. Because, "[i]n this case, the government's violation constituted a breach that requires a remedy," id. at 156, the Court ruled that Troy Vaval is entitled to "the remedy of resentencing before a different district judge." Id.

### *POINT:    Troy Vaval is Entitled to Specific Performance of his Plea Agreement*

"When the Government breaches a plea agreement, the defendant is entitled to either withdraw his plea or have his agreement specifically performed." United States v. Cimino, 381 F.3d 124, 127 (2d Cir. 2004) (citing U.S. v. Lawlor, 168 F.3d 633, 638 (2d Cir. 1999). Here, the Court of Appeals has already determined that plea withdrawal would not provide Mr. Vaval with a suitable remedy. Accordingly, the appropriate remedy is specific performance of the plea agreement.

In enforcing the plea agreement, this Court must decide "'what the parties reasonably understood to be the terms of the agreement,' remembering that 'any ambiguity should be resolved against the government.'" United States v. Enriquez, 42 F.3d 769, 772 (2d Cir. 1994). Indeed, it is well-settled in the Second Circuit that:

> "courts construe plea agreements strictly against the Government. This is done for a variety of reasons, including the fact that the Government is usually the party that drafts the agreement, and the fact that the Government ordinarily has certain awesome advantages in bargaining power."

United States v. Ready, 82 F.3d 551, 559 (2d. Cir. 1996). (*See also* U.S. v. Cosimi,

6

Honorable David B. Trager
December 20, 2007


368 F. Supp. 2d 345, 353 (S.D.N.Y. 2005)(pursuant to the rules governing contract law and other public policy considerations, plea agreements, which are drafted by the Government, are strictly construed against the government). For, as the United States Supreme Court has noted, entry into a plea bargain:

> "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, **such promise must be fulfilled**."

Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 499 (1971)(emphasis supplied).

Specific performance in this case requires enforcement of the agreed-upon Total Offense Level of 30 which was contained in the plea agreement. In its preface to the Guidelines calculations set forth in the plea agreement, the Government stated that it was "based on information known to the Office at this time." The defendant, Troy Vaval, accepted the addition of four enhancements to the Base Offense Level of 20 in order to arrive at the Total Offense Level of 30. His belief that the plea agreement reflected the Government's position regarding his sentencing range was thus warranted by the terms of that agreement.

But based upon information supplied to the Probation Department by the Government, the PSR recommended an increase of Mr. Vaval's Guidelines computation by two levels. The added points were based upon an account of Mr. Vaval's flight from the crime scene, during which he was pursued by law enforcement officers. The description of the offense conduct contained in the PSR was attributed to the law enforcement agents conducting this investigation. Since the crime of conviction stemmed from a government-run operation and was being monitored by government agents, these particular circumstances were certainly well-known to the Government at the time the Office drafted this plea agreement. Necessarily, then, it was information supplied by the Government which caused the

Honorable David B. Trager
December 20, 2007

Probation Department to add those two additional levels.[2] Because the Government had agreed that it could neither seek an upward departure nor advocate for a sentence at the high end of the Guidelines range, it is respectfully submitted that the Government was prohibited from supplying information to the Probation Department in order to prompt the finding of a higher Guidelines range than that set forth in the plea agreement. *Cf.* U.S. v. Lawlor, supra, 168 F.3d at 637; U.S. v. Enriquez, supra, 42 F.3d at 772.

Fair and just application of the plea agreement entered into between Troy Vaval and the Government would result in a Total Guidelines Offense level of 30. At the time of his plea entry, Mr. Vaval had a good-faith basis to rely upon the Guidelines calculations envisioned in his plea agreement. Because his correct Criminal History Category is II, the resulting Guidelines sentencing range is 108 - 135 months' incarceration.[3]

### *The Appropriate Sentence*:

For the foregoing reasons, Mr. Vaval asks the Court to afford him the remedy of specific performance of the terms of his plea agreement. He also wishes to advise the Court of certain events which have fundamentally changed his life since the PSR was written in the autumn of 2003.

---

[2] Inasmuch as the trial of the co-defendant Nathaniel Bernard had not yet taken place at the time of the writing of the PSR, it cannot be claimed that this was new information which the Government learned only during the co-defendant's jury trial. Indeed, it is self-evident that the Government had this information from the date of the crime charged, since it is alleged that law enforcement agents pursued Mr. Vaval as he fled.

[3] Other sentencing issues, such as restitution, were resolved by the Court of Appeals and are not before the District Court for the purposes of resentencing. And although the previous judge recommended placement in a drug-treatment program, Mr. Vaval notes that he is not eligible for enrollment pursuant to Bureau of Prisons policies because a firearm was involved in the instant offense.

Honorable David B. Trager
December 20, 2007

      First and foremost, Mr. Vaval has suffered the loss of his beloved mother, Francis U. Melford. As the PSR correctly noted, Mr. Vaval lived with his mother for most of his life. Despite – or perhaps because of – the family's hardships, including an absent father, Troy and his mother maintained a close and caring relationship. When Troy's life became difficult as the result of his drug abuse, she was his most reliable and comforting supporter, always encouraging him that he could do better. But on May 24, 2006, she died at age 74 from cardiovascular disease. Troy was shaken by the loss of this central figure in his life. But because he was incarcerated in federal custody on this matter, he was unable to attend her memorial service or even her viewing. His first reaction was to feel mortified that his own conduct had led to his jailing, causing him to miss his mother's final days. His grief was compounded by his inability to share this time meaningfully with other family members. His mother's death has had a lasting impact on Mr. Vaval. It forced him to take stock, and to consider how his own absence was affecting his children, particularly his young son.

      Mr. Vaval has three children with Felicia Holder, a woman he has been involved with for twenty years. Together they have two daughters, who are now 19 and 18, and a son, Troy Jr., who is almost 10 years old. For a year or so before his arrest and incarceration in this matter, Mr. Vaval and Ms. Holder began to have difficulties, and separated temporarily. Briefly, he became involved with another woman, Tamika Moody, who was a business associate. That relationship never really jelled romantically, however, and for the last several years, Mr. Vaval has resumed his close relationship with Felicia Holder. They communicate regularly, most frequently regarding Troy Jr., who has been placed in "special education" classes for children with emotional and learning disabilities. The defendant often speaks of his son, wishing that he could serve as his mentor. He also regrets the strain that his absence from the home places on Felicia Holder, and looks forward to the day when he can assist his family.

      In that regard, Mr. Vaval has sought to develop better business skills during the course of his incarceration. At Otisville F.C.I., he has taken computer classes and developed a keen interest in building computer units as well as operating computers.

9

Honorable David B. Trager
December 20, 2007

Such skills, he believes, will augment his skills as an electrician when he is released from custody and applies for work.

While incarcerated, Mr. Vaval has also studied for the G.E.D. exam, and completed two substance-abuse courses. Indeed, Mr. Vaval has endeavored to use this time for self-improvement. But his period of incarceration has been made harder by the bouts of pain he experiences following a series of surgeries that he underwent in the months prior to his arrest herein. In 2001, while working as an electrician, Mr. Vaval fell off a ladder and badly injured his left knee. Later that same year, he fell down some stairs, broke his right leg and re-injured his left knee. While incarcerated at Otisville F.C.I. as well as the M.D.C., he has experienced severe depression as the result of the unrelenting bouts of pain. The medical care and treatment in the institution is inadequate to address his needs. He worries that the lack of appropriate medical attention could lead to life-long impairment and crippling.

Simply stated, his experiences over the past several years have had a sobering effect on Mr. Vaval. He is determined to be goal-oriented so that he can return to his common-law wife, help support the family, and be a good father to Troy Jr. During the past year, Felicia Holder has regularly telephoned counsel to express her concern and love for Mr. Vaval. Other friends and family members have frequently communicated to counsel that he is a much-loved member of their extended family. Presently, they are gathering letters of support on Mr. Vaval's behalf, which will be submitted separately to the Court.

## Conclusion

Pursuant to 18 U.S.C. Sec. 3553(a), Troy Vaval asks the Court to impose a sentence that is sufficient, but not greater than necessary, to satisfy the goals of sentencing. Clearly, at the time of his entry into this plea agreement, the Government agreed that a Guidelines level of 30 would produce a reasonable sentence. The Court of Appeals has ruled that the Government breached that plea agreement by effectively advocating for a higher sentence, and has remanded this matter for re-sentencing.

Honorable David B. Trager
December 20, 2007

      Given the history, the context and the circumstances of this case, Mr. Vaval is entitled to specific performance of the terms of his original plea agreement. Accordingly, he asks this Court to determine that his agreed-upon Guidelines level is 30, his correct Criminal History Category is II, and his appropriate sentencing level is 108 - 135 months. Based upon all of he foregoing, he respectfully asks the Court to impose a sentence at the lowest end of the applicable range.

      On behalf of Troy Vaval, I respectfully reserve the right to raise additional issues, if necessary, at the time of sentencing. Thank you very much for your attention to, and consideration of, the matters addressed in this submission.

                                            Respectfully submitted,

                                            **Nancy Lee Ennis**

                                            Nancy Lee Ennis


cc:    A.U.S.A. Colleen Kavanagh